**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALASKA INDEPENDENCE PARTY;
LINDA WINKELMAN; ALASKA
LIBERTARIAN PARTY, INC.; SCOTT
KOHLHAAS,
            *Plaintiffs-Appellants,*

            v.

STATE OF ALASKA, Division of
Elections; LOREN LEMAN
Lieutenant Governor,
            *Defendants-Appellees.*

No. 07-35186

D.C. No.
CV-06-00040-TMB

OPINION

Appeal from the United States District Court
for the District of Alaska
Timothy M. Burgess, District Judge, Presiding

Argued and Submitted
August 7, 2008—Anchorage, Alaska

Filed October 6, 2008

Before: Dorothy W. Nelson, A. Wallace Tashima and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

14177

---

**COUNSEL**

Kenneth P. Jacobus, Anchorage, Alaska, for the plaintiffs-appellants.

Michael A. Barnhill (argued), Senior Assistant Attorney General, and Talis J. Colberg, Attorney General, Juneau, Alaska, for the defendants-appellees.

---

**OPINION**

FISHER, Circuit Judge:

Alaska requires political parties to nominate candidates for the state's general election ballot in a state-run primary, in which any registered member of a political party may seek the party's nomination. Nominees are then chosen by the vote of party-affiliated voters and any other voters whom the parties choose to let participate. The Alaska Independence Party ("AIP") and the Alaska Libertarian Party ("ALP") contend that these laws burden their associational rights in violation of the First Amendment because they force them to associate with candidates who, they claim, are not members of their party or are not ideologically compatible with the party. We hold that Alaska's primary system is justified by compelling state interests and is therefore facially constitutional.

## I.   Factual and Procedural Background

Alaska has a mandatory direct primary system, in which all candidates for elective state and national office who appear on

the state's general election ballot are "nominated in a primary election by direct vote of the people." Alaska Stat. § 15.25.010. Alaska allows each political party to choose who among the electorate may vote in its primary. Under Alaska's default rule, a party's nominee is selected by voters affiliated with that political party, as well as voters who are not affiliated with any party. *Id.* Such a primary is conventionally referred to as a "limited open primary" or "partially closed primary." *See State v. Green Party of Alaska*, 118 P.3d 1054, 1057-58 (Alaska 2005). A party may opt out of these default provisions, however, by restricting its ballot to affiliated voters only, thereby holding a "closed primary," or expanding its ballot to even those voters who are registered with other political parties, an "open primary." *See* Alaska Stat. §§ 15.25.010, 15.25.014(a); *see also Green Party*, 118 P.3d at 1057-58 (explaining the operation of Alaska's mandatory direct primary system). Parties that have opted to hold an open primary may choose to combine their candidates on a single ballot. *See Green Party*, 118 P.3d at 1070. In recent elections, both the AIP and ALP elected to hold open primaries and have their candidates appear on a combined ballot, which listed AIP and ALP candidates together with candidates from the Democratic and Green parties.

Given the considerable freedom that Alaska law provides to political parties to determine who may vote to select their nominee, the AIP and ALP unsurprisingly do not argue here that the Alaska primary forces them to associate with any unaffiliated or undesired *voters*. Rather, they argue that Alaska's laws run afoul of the First Amendment because they force parties to associate with undesired *candidates* who appear on the primary ballot and seek their parties' nominations. Alaska allows "[a] member of a political party who seeks to become a candidate of the party in the primary election" to appear on the party's primary ballot, provided the candidate swears a declaration of candidacy with the state and meets the state's qualifications for office. Alaska Stat. § 15.25.030(a). As is relevant here, one of those qualifications

is that the candidate must be "registered to vote as a member of the political party whose nomination is being sought." *Id*. § 15.25.030(a)(16). Such party affiliation occurs when a candidate registers as a voter with Alaska's voter registration agency, *id*. § 15.07.050, but the parties themselves do not exercise control over who may affiliate with the party in this way. If the state receives a complaint concerning any candidate's eligibility for a particular office, the state director of elections must verify and make a determination of the candidate's eligibility within 30 days. *Id*. § 15.25.042.

Both the AIP and ALP are governed by party constitutions and internal bylaws that define party membership, specify criteria for a party candidate's eligibility for public office and define various means by which the parties endorse or nominate party candidates, some of which they suggest significantly conflict with state law. AIP bylaws state that party membership is "limited to all residents of Alaska who have registered to vote with the State Department of Elections and selected the Alaskan Independence Party as their political affiliation of preference." AIP bylaws also state that those who file for public office as a candidate of the AIP "shall be registered members of the [AIP] at the time of filing." ALP bylaws do not appear to define party membership, but they do state that "[a]ll candidates for nomination, election or endorsement . . . shall be ALP members." Both the AIP and ALP have provisions in their bylaws that allow them to endorse candidates for office at their conventions and decline to endorse candidates with whom they do not agree. Both AIP and ALP bylaws acknowledge that the state has imposed a mandatory primary as the means for selecting nominees, although both parties' bylaws also provide, in the alternative, for nominations by convention to the extent permitted by state law.[1]

---

[1]AIP bylaws provide for nomination by convention "[i]n any election for public office where the Alaska Independence Party is authorized by

The AIP and ALP ("Appellants") brought this suit under 42 U.S.C. § 1983, alleging that Alaska's primary system violates their right to free speech and association and seeking declaratory and injunctive relief under the First Amendment and the Alaska Constitution.[2] Appellants requested a declaratory judgment "that political parties themselves, and not the State of Alaska, have the right to determine how their candidates to appear on Alaska election ballots are to be selected, and that the State of Alaska must allow a political party to select its candidates for the general election ballot in a manner acceptable to the political party," and sought a permanent injunction against Alaska's election laws. Alaska moved to dismiss and Appellants cross-moved for summary judgment. The district court construed the state's motion to dismiss as a motion for summary judgment, which, after adducing evidence and obtaining further briefing, it granted for the state. We review the district court's decision on cross-motions for summary judgment de novo. *Pocatello Educ. Ass'n v. Heideman*, 504 F.3d 1053, 1056 (9th Cir. 2007), *cert. granted sub nom.*, *Ysursa v. Pocatello Educ. Ass'n*, 128 S. Ct. 1762 (Mar. 31, 2008) (No. 07-869). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## II.   Analysis

**[1]** "A political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee

---

law to nominate a candidate." ALP bylaws more colorfully denounce the state-run primaries as "a waste of taxpayers' money, [that] serve only as free advertising for candidates," but state that "until that happy day when government-sponsored primaries are abolished, and we may nominate all our candidates at our own convention, we recognize the hard realities and expediencies of politics, and consent to have Libertarian candidates for elective public office appear on a primary ballot. . . ."

[2]Appellants do not argue on appeal that the state-run primary violates the Alaska Constitution.

who best represents its political platform." *N.Y. Bd. of Elections v. Lopez Torres*, 128 S. Ct. 791, 797 (2008). As the Supreme Court has noted, however, "[t]hese rights are circumscribed . . . when the State gives the party a role in the election process," such as "by giving certain parties the right to have their candidates appear with party endorsement on the general-election ballot." *Id.* at 797-98. Where, as here, the state assumes this role, "then also the State acquires a legitimate governmental interest in assuring the fairness of the party's nominating process, enabling it to prescribe what that process must be." *Id.* at 798. The validity of such an election law "depends on the severity of the burden it imposes on the exercise of constitutional rights and the strength of the state interests it serves." *Nader v. Brewer*, 531 F.3d 1028, 1034 (9th Cir. 2008). The question before us is whether Alaska has a sufficiently compelling interest in its state-run mandatory primary justifying the burden on Appellants' associational rights. We hold that it does.

"[I]n considering a constitutional challenge to an election law, a court must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.' " *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). The Supreme Court has held that "the severity of the burden the election law imposes on the plaintiff's rights dictates the level of scrutiny applied by the court." *Id.* Specifically, "an election regulation that imposes a severe burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest," whereas regulations that impose lesser burdens will be upheld as long as they are justified by "a state's 'important regulatory interests.' " *Id.* at 1035 (quoting and citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *see also Clingman v. Beaver*, 544 U.S. 581, 592 (2005) ("[N]ot every electoral law that burdens associational rights is subject to strict scrutiny; . . . [i]nstead, . . . strict scrutiny is appropriate only if the burden is severe.").

We need not decide in this case which level of scrutiny is appropriate, however, because we hold that Alaska's mandatory primary election law withstands even the more rigorous scrutiny.

## A.  Alaska's Mandatory Direct Partisan Primary

**[2]** Although Appellants' argument is a bit muddled, they first contend that Alaska's state-run primary violates their associational rights either by compelling them to nominate their candidates by primary election instead of convention, or by failing to allow them to "exclude candidates that do not support the principles and philosophies of the parties from their primary elections, and not have these candidates forced on them by state law." However framed, Appellants' argument at its core is an attack on the mandatory direct primary itself. Like most states, Alaska implemented its direct primary during the Progressive Era, seeking to remove party nominating decisions from the infamous "smoke-filled rooms" and place them instead in the hands of a party's rank-and-file, thereby destroying " 'the corrupt alliance' between wealthy special interests and the political machine." *See Lightfoot v. Eu*, 964 F.2d 865, 872 (9th Cir. 1992) (quoting Richard Hofstadter, *The Age of Reform* 257 (1955)). Alaska agrees that the purpose of Alaska's mandatory direct primary is to provide a neutral mechanism for resolving party nominating decisions that reduces the role of party leadership and gives ultimate authority to party voters. This advances the state's interest in limiting opportunities for fraud and corruption by preventing party leadership from controlling nominating decisions, while promoting democratic decisionmaking. The state's goals would clearly be impeded if party leaders could either opt out of the primary altogether or interfere with the democratic process by exercising veto power over the candidates that might seek the nomination.

**[3]** These benefits of mandatory direct primaries are the reason why "[n]early every State in the Nation now mandates

that political parties select their candidates for national or statewide office by means of primary elections." *See Clingman*, 544 U.S. at 599 (O'Connor, J., concurring). Although the Supreme Court has never entertained a direct challenge to a state's use of a closed mandatory direct primary or an open primary that is selected by the party itself, it has numerous times stated that it is "too plain for argument" that "a State may require parties to use the primary format for selecting their nominees, in order to assure that intraparty competition is resolved in a democratic fashion." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 572 (2000) (quoting *Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974); *see Lopez Torres*, 128 S. Ct. at 798. As the Court has noted, "[a] primary is not hostile to intraparty feuds; rather it is an ideal forum in which to resolve them." *Eu v. S.F. County Democratic Cent. Comm.*, 489 U.S. 214, 227 (1989). We have also agreed that "the State's interest in enhancing the democratic character of the election process overrides whatever interest the Party has in designing its own rules for nominating candidates," such as its desire to nominate through party-run convention. *Lightfoot*, 964 F.2d at 873; *see Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 237 (1986) (Scalia, J., dissenting) (noting that "[a state] may lawfully require that significant elements of the democratic election process be democratic — whether the Party wants that or not").

Appellants nonetheless argue that even if they may constitutionally be compelled to participate in the primary, Alaska's primary impermissibly burdens their associational rights because Alaska does not allow the party to exclude from the ballot those candidates the party finds objectionable. For this argument, Appellants rely on our decision in *Washington State Republican Party v. Washington*, 460 F.3d 1108 (9th Cir. 2006), *rev'd by Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184 (2008). Appellants, however, misunderstand the burden on associational rights at issue in *Washington State*, which involved a constitutional challenge to a mandatory blanket primary. *See* 460 F.3d at

1113. The Supreme Court has held that blanket primaries, in which all candidates are combined on a single ballot and may be voted upon by voters affiliated with any party, violate a party's associational right to have its nominee chosen by members of its own party. *See Jones*, 530 U.S. at 577 (holding that a blanket primary "forces political parties to associate with — to have their nominees, and hence their positions, determined by — those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival"). Because blanket primaries violate political parties' First Amendment rights, they may not constitutionally be used to "choos[e] a party's nominee." *Id*. at 586. The Supreme Court has suggested, however, that blanket primaries may be a permissible way for the voters to choose, on a *nonpartisan* basis, the candidates who will appear on a general election ballot. *Id.* at 585-86.

The blanket primary challenged in *Washington State* sought to comply with *Jones* by presenting candidates without party affiliations, thereby creating an ostensibly nonpartisan primary, yet allowed candidates to indicate a "political party preference" without expressly having or running for the party's nomination. *See* 460 F.3d at 1114. The question the Supreme Court faced in *Washington State* was whether a nonpartisan blanket primary "that indicates each candidate's preference on the ballot, in effect, chooses the parties' nominees," which would seemingly be impermissible under *Jones*. 128 S. Ct. at 1192. The Court held that although "it is *possible* that voters will misinterpret the candidates' party-preference designations as reflecting endorsement by the parties," it could not resolve this question without an "evidentiary record against which to assess their assertions that voters will be confused." *Id*. at 1193-94. The Court therefore held that First Amendment challenges to primary ballots that turn on "the possibility that voters will be confused as to the meaning of the party-preference designation" must be brought only through an as-applied, not a facial, challenge. *See id*. at 1193.

Alaska's self-selected closed, open or partially closed primary system does not resemble the one at issue in *Washington State*, because it is not a blanket primary and therefore does not present the risk that — *if* used to choose a party's nominee — the nominee will be chosen by voters with whom the party prefers not to associate. The Alaska primary is even more respectful of a party's associational rights than is constitutionally required, because it allows parties to decide whether they want to allow nonparty members to participate, as both the AIP and ALP have elected to do. *Cf. Clingman*, 544 U.S. at 592-93 (holding that a state law forbidding parties from inviting members of other parties to participate in their primary places "no heavy burden" on parties' associational rights). Contrary to Appellants' argument here, there seems little risk that voters will mistake the candidates running in a partisan primary — where the very purpose, unlike in a nonpartisan blanket primary, is to allow party voters to choose the party's nominee — to *be* the party's nominee. Further, even to the extent such voter confusion might be possible, the Supreme Court has made clear that First Amendment challenges that rest on the risk of voter confusion must be brought only on an as-applied basis. *See Wash. State*, 128 S. Ct. at 1195.[3]

**[4]** The potential burden that Alaska's type of primary places on parties' associational rights is therefore quite different from the one posed by the nonpartisan blanket primary at issue in *Washington State*. Appellants' argument, when distilled to its essence, is that a partisan ballot open only to those voters chosen by the party itself, nonetheless burdens parties' associational rights because a candidate may seek the party's nomination against the wishes of the party's leadership. Such

---

[3]Although Appellants make a late-hour attempt to argue that their lawsuit was, in fact, an as-applied challenge to Alaska's primary ballots from 2004 and 2006, neither the relief they sought in their complaint nor the arguments they made to the district court were consonant with an as-applied challenge. We therefore reject Appellants' attempt during oral argument to refashion their suit in light of the Supreme Court's holding in *Washington State*.

a primary undoubtedly intrudes on the party's associational rights, because it limits the party's ability to "choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." *Lopez Torres*, 128 S. Ct. at 797. The AIP and ALP would prefer to present primary voters with a limited set of pre-approved candidates, whereas Alaska law permits any registered affiliate of the party to run in the primary. The burden on the parties' rights, therefore, is the conflict between the party's wish to enforce greater top-down control and the state's mandate that rank-and-file party voters have the opportunity to consider and vote for any affiliated party member who seeks the nomination.

**[5]** We are skeptical that such a conflict imposes a severe burden on parties' associational rights. Instead of having its nominee selected or screened by party leadership, the party's nominee is selected democratically by registered party voters (and any others whom the party chooses to let participate), from a slate of all qualified, affiliated candidates who seek the nomination. The burden on parties' associational rights is further lessened because the Supreme Court has long protected the party's First Amendment right to "state[ ] whether a candidate adheres to the tenets of the party or whether party officials believe that the candidate is qualified for the position sought," which protects the party's right to distance itself from undesired candidates and urge party voters to choose the nominee who the party feels best represents the party platform. *See Eu*, 489 U.S. at 223. Appellants do not contend that they are prohibited by state law from endorsing their preferred candidate and disavowing undesired candidates.

**[6]** Although we therefore believe it unlikely that Alaska's primary law imposes a severe burden on Appellants' associational rights, we ultimately need not decide what level of scrutiny to apply, because Alaska's primary election law withstands even strict scrutiny. *See Nader*, 531 F.3d at 1035 (holding that "an election regulation that imposes a severe

burden is subject to strict scrutiny and will be upheld only if it is narrowly tailored to serve a compelling state interest"). We have long recognized that a state's interest in eliminating the fraud and corruption that frequently accompanied party-run nominating conventions is compelling, and that a democratic primary is narrowly tailored to advance these state interests. *See Lightfoot*, 964 F.2d at 873 (upholding a state's mandatory direct primary under strict scrutiny, because "the State's interest in enhancing the democratic character of the election process overrides whatever interest the Party has in designing its own rules for nominating candidates," and "no measure short of the direct primary would be adequate" to these goals). Appellants' challenge to Alaska's democratic mandatory direct primary therefore fails.

## B.    Alaska's Party Affiliation Rule

Appellants also make a second argument, which is that Alaska's primary election law compels them to associate with candidates who are not in fact party members or who are not qualified under party rules to run as party candidates, thereby also burdening their associational rights. Although Appellants concede that state law requires all candidates who seek the nomination to be registered affiliates of the party, *see* Alaska Stat. § 15.25.030(a)(16), Appellants nonetheless protest that such registration "does not confirm 'party membership,' " because affiliation occurs under state law by the candidate's own choice, regardless of whether "that person is a member or supporter of the party, or whether the political party even wants that person as a member." They argue that political parties, as expressive associations, have the right to define their own membership. *See Roberts v. U. S. Jaycees*, 468 U.S. 609 (1984). By certifying candidates for office who, the Appellants claim, are not true members of the party or are not qualified to run for office under the party's bylaws, the state forces members and candidates unwillingly upon them.

[7] Appellants provide no support for their argument that their own party membership and candidacy rules conflict with

state law, however. AIP bylaws in fact support the contrary conclusion, because they define party membership to include "all residents of Alaska who have registered to vote with the State Department of Elections and selected the Alaskan Independence Party as their political affiliation of preference." These same bylaws permit anyone to run as a candidate of the AIP so long as that person is a "registered member[ ] of the [AIP] at the time of filing." AIP requirements to run for office are therefore seemingly identical to Alaska's laws, which allow a candidate to seek the nomination if he or she is "registered to vote as a member of the political party whose nomination is being sought," which occurs when the voter "mark[s] the voter's choice of party affiliation on the voter registration application form." Alaska Stat. §§ 15.25.030(a)(16), 15.07.050. We also find nothing to the contrary within ALP bylaws. Because Appellants have provided no citation to the record or support for their claim that their own bylaws conflict with the state's definition of party membership, we hold that this argument is waived. Further, to the extent Appellants argue that certain specific candidates for office have been improperly certified by Alaska in the past, these challenges would be properly brought on an as-applied, not facial, challenge. *See Wash. State*, 128 S. Ct. at 1191.

### III.  Conclusion

There is no question that the state must "proceed with great caution when it acts in ways that undermine the ability of individuals" to form and run political parties as they choose. *Lightfoot*, 964 F.2d at 873. However, "[t]urning the entire electoral apparatus over to political parties would pose as great a threat to the integrity of our system of government as would the state's unprincipled meddling in the political process." *Id.* Alaska's mandatory direct primary is justified by compelling state interests in avoiding fraud and corruption and promoting democratic decisionmaking, and therefore

does not on its face impermissibly burden parties' associational rights.

**AFFIRMED**.